# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **KELVIN PERKINS,** | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV 17-392-RAW-SPS |
| **JOE M. ALLBAUGH, DOC Director,** | ) |
| Defendant. | ) |

## OPINION AND ORDER

This action is before the Court on Defendant's motion to dismiss or for summary judgment (Dkt. 16). Plaintiff, an inmate in the custody of the Oklahoma Department of Corrections (DOC) who presently is incarcerated at Davis Correctional Facility (DCF) in Holdenville, Oklahoma, brings this action under the authority of 42 U.S.C. § 1983, seeking relief for alleged constitutional violations during his incarceration. The defendant is Joe M. Allbaugh, DOC Director.

Plaintiff was housed at Jackie Brannon Correctional Center (JBCC) in McAlester, Oklahoma, when he was working on a clean-up crew for the Oklahoma State Penitentiary (OSP) tower removal, also in McAlester. (Dkt. 1 at 18). On the morning of November 17, 2016, he was struck in the head by debris being thrown from the tower. He claims he continues to suffer medical problems from this incident. (Dkt. 1 at 2).

Plaintiff alleges he was knocked unconscious and was rushed to the OSP medical facility where he was treated for severe bleeding. He was in horrible pain from the top of his head to the bottom of his knees, with dizziness and uncontrollable shaking. Although

he informed the OSP medical staff of his symptoms, he received no treatment for his aching head. Instead, his head was re-bandaged. *Id.* at 3.

Plaintiff next was taken to the housing unit where he told the unit manager he needed medical services from JBCC rather than OSP. The unit manager told him to go after the yard count was completed. After demanding to be seen by medical services, he was seen by a nurse practitioner, not a "real doctor," who gave him a tetanus shot, checked his heart and blood pressure, looked in his eyes, gave him gauze to wrap his head, and ordered 800 mg. ibuprofen tablets. *Id*.

On the day of the incident, Plaintiff submitted a request to see a mental health professional. *Id.* The sick call slip was returned with a receipt date of November 23, 2016. *Id*. The request stated he had not been the same since the accident, and he claimed to have the following symptoms:

> I told them that I was experiencing memory loss, nightmares in my sleep, dizziness, paranoia, mood swings, anxiety, muscle aches and spasms, tightness and stiffness in the left side of my neck, white speckles in my eyes, my ears ringing and popping, sharp pain in my lower back and knees when I stand up, and my vision in my eyes hurt to sunlight, and I also had trouble breathing out of my nose.

*Id*. He was seen a mental health provider on November 30, 2016. *Id.*

Plaintiff further alleges that over the next few days, his condition got worse, and he requested immediate medical care on November 21, 2016. The medical treatment slip was returned with a notation of "scheduled," but he never saw a medical provider. *Id.* at 7-8.

**Standard of Review**

The pleading standard for all civil actions was articulated in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). *See Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009). To avoid dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. A court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the plaintiff. *Id*. at 555-56. "So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," the cause of action should be dismissed. *Id*. at 558.

A pro se plaintiff's complaint must be broadly construed under this standard. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The generous construction to be given to the pro se litigant's allegations "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Notwithstanding a pro se plaintiff's various mistakes or misunderstandings of legal doctrines or procedural requirements, "if a court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so . . . ." *Id*. A reviewing court need not accept "mere conclusions characterizing pleaded facts." *Bryson v. City of*

*Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990); *see also Twombly*, 550 U.S. at 555. The Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997). With these standards in mind, the court turns to the merits of Defendant's motion.

**Tort Claim**

On March 30, 2017, Plaintiff made a claim for compensation under the Oklahoma Governmental Tort Claims Act. (Dkt. 1 at 35). Although the complaint does not expressly raise this claim, Defendant asserts this was a tort claim for medical negligence at a private prison. (Dkt. 16 at 23). Defendant alleges that to the extent Plaintiff is alleging a tort claim for medical negligence, it must fail as a matter of law. According to a letter dated June 2, 2017, from the Office of Risk Management and Enterprise Services--Risk Management Department, the tort claim was denied pursuant to Okla. Stat. tit. 51, § 155(18), (25), and (30). *Id.* at 39.

The Oklahoma Governmental Tort Claims Act, Okla. Stat. tit. 51 § 151, is the exclusive remedy by which an injured plaintiff may recover against an Oklahoma governmental entity in tort. *Fuller v. Odom*, 741 P.2d 449, 451-53 (Okla. 1987). In Okla. Stat. tit. 51, § 152.1(A), the legislature adopted the doctrine of sovereign immunity for the State, its political subdivisions, and all employees acting within the scope of their employment. *Id.* "Scope of employment" is defined as "performance by an employee

acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority . . . but shall not include corruption or fraud." Okla. Stat. tit. 51 § 152(12). Here, Plaintiff has not alleged that any person was acting outside the duties of his office or had otherwise engaged in fraud or corruption when the claim arose. Thus, there is no liability for Defendant Allbaugh.

To the extent Plaintiff is asserting that a private prison failed to provide adequate medical care, pursuant to Okla. Stat. tit. 51, § 155(25), immunity is preserved for the State of Oklahoma on claims arising from the "[p]rovision, equipping, operation or maintenance of any prison, jail or correctional facility . . . ." In *Medina v. State*, 871 P.2d 1379 (Okla. 1993), the exemption was defined using the ordinary meaning of the operative words "provision," "equipping," "operation" and "maintenance" of a prison. *Id.* at 1382. Further, this exemption encompassed "all activity involved in the performance of policy." *Id.* at 1383. Thus, Plaintiff's tort claim arising from the alleged denial of medical services at the prison also must fail.

In addition, Okla. Stat. tit. 51, § 155(18), exempts the State from liability for "[a]n act or omission of an independent contractor or consultant or his or her employees, agents, subcontractors or suppliers or of a person other than an employee of the state or political subdivision at the time the act or omission occurred." Because Plaintiff's claims arose from the alleged acts or omissions of personnel in a private prison, his claims clearly are prohibited.

5

Based on the above analysis, the Court finds the State of Oklahoma has not waived its sovereign immunity with regard to Plaintiff's tort claim. The claim, therefore, must be dismissed.

**Exhaustion of Administrative Remedies**

Defendant Allbaugh alleges Plaintiff has failed to exhaust the administrative remedies for his claims. "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted). In deciding a motion to dismiss based on nonexhaustion, the Court can consider the administrative materials submitted by the parties. *See Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1212 (10th Cir. 2003), *abrogated in part on other grounds*, *Jones v. Bock*, 549 U.S. 199 (2007).

According to the DOC Offender Grievance Process, OP-090124, an inmate first must attempt to resolve his complaint informally by communicating with staff within three

days of the incident. (Dkt. 15-3 at 6). If that is unsuccessful, he may submit a Request to Staff (RTS) within seven calendar days of the incident, alleging only one issue per form. *Id*. at 7. If the offender does not receive a response to his RTS within 30 calendar days of submission, he may submit a grievance to the Review Authority (warden's office), asserting only the issue of the lack of response to the RTS. *Id*. at 8. If the complaint is not resolved after the response to the RTS, the offender then may file a grievance. *Id.* If the complaint is medical, the grievance must be submitted to the facility Correctional Health Services Administrator (CHSA). *Id.* at 9. Grievances that are an emergency or of a sensitive nature can be submitted directly to the reviewing authority without informal resolution. This is appropriate where the inmate faces a substantial risk of personal injury, sexual harm, or other irreparable harm. *Id.* at 15. If the grievance also does not resolve the issue, the inmate may appeal to the Administrative Review Authority or the Medical Administrative Review Authority. *Id*. at 12. The administrative process is exhausted only after all of these steps have been taken. *Id*. at 14.

Plaintiff alleges in the complaint that Defendant Allbaugh was deliberately indifferent by failing to provide appropriate medical care and treatment of his head, neck, and back pain. He contends in his response to the motion to dismiss that he has fully exhausted his grievance process, and he still is being denied the medical treatment he needs. (Dkt. 20). Plaintiff's attempts to exhaust the administrative remedies for his claims are set forth below.

On December 2, 2016, Plaintiff submitted an RTS to the warden of JBCC, requesting relief for alleged negligent failure to provide a safety hat and a safe construction work site in compliance with OSHA requirements. (Dkt. 1 at 11-12). He also requested professional medical and mental health services. *Id.* In response, Plaintiff was advised to request health services at DCF, his current facility. *Id.*

On December 20, 2016, Plaintiff submitted Grievance No. 00312 on this issue. *Id.* at 13-14. The grievance also requested monetary compensation for the violation of Plaintiff's Eighth and Fourteenth Amendment right to be free from DOC's negligence in failing to meet OSHA's safety requirements. *Id.*

On December 29, 2016, Grievance No. 00312 was returned unanswered because the grievance form was not completed correctly, grievances cannot request monetary compensation, and a grievance cannot include more than one issue per grievance form. *Id.* at 15-17. Plaintiff was advised that his requests for medical relief first must be pursued in a request for health services submitted to his current facility, DCF. Plaintiff was further instructed that if his medical needs were not adequately addressed, he could submit an RTS to the DCF Correctional Health Services Administrator (CHSA), followed by a grievance to JBCC, where the injury was sustained. There is, however, no indication that Plaintiff resubmitted the grievance.

On January 8, 2017, Plaintiff submitted an RTS to Ray Larimer, DCF CHSA, requesting medical treatment for his head, neck, left shoulder, left elbow, and lower back. (Dkt. 1 at 18-19). In response, he was advised to submit a request for medical services,

because he had submitted no medical requests since he saw a medical provider on December 7, 2016. *Id*. at 18. On January 13, 2017, he submitted a request for health services at DCF. *Id.* at 20. The response stated he was seen in medical and referred to a provider. *Id*.

Plaintiff next submitted two emergency medical grievances with each requesting X-rays, health care, and pain medication for his head injury. *Id*. at 21-22, 26-27. The first emergency grievance, submitted to the DCF CHSA on January 17, 2017, was returned unanswered on January 18, 2017, for failure to comply with the grievance procedure. *Id.* at 21-25.

His second emergency grievance, dated January 19, 2017, was submitted to DOC's Medical Services Administrator, who also serves as the final Administrative Review Authority for medical issues. *Id.* at 26-27. The response to the second emergency grievance granted partial relief in that Plaintiff's request for medical treatment was provided during a medical appointment on January 24, 2017. *Id*. at 28. Because Plaintiff's second emergency grievance sought relief beyond what was provided at the medical appointment, he was advised to address additional medical concerns in a request for health services form. *Id.* Thus, the grievance was partially denied. *Id*.

Plaintiff attempted to appeal the response to the second emergency grievance. *Id.* at 29. On March 8, 2017, the appeal was returned, and Plaintiff was informed that because the grievance was submitted directly to DOC's final medical administrative reviewing

authority, the response was final. *Id.* at 33. Plaintiff was also advised that, because his grievance appeal included requests beyond the scope of the original grievance, the appeal was improperly submitted. *Id.*

On March 6, 2017, March 8, 2017 and May 19, 2017, Plaintiff submitted correspondence and RTSs wherein he complained about medical care and specifically requested treatment by an outside medical provider. (Dkt. 1 at 31-32, 34, 37-38). Respondent asserts there is no indication that Plaintiff filed related grievances or appeals. The only issue for which the administrative remedies were exhausted concerned Plaintiff's request for medical appointments at a private prison, which he received. Plaintiff's claims, to the extent that they are based upon failure to provide outside medical treatment including X-rays and evaluations, remain unexhausted. Therefore, the Court finds Plaintiff failed to fully and properly exhaust administrative remedies regarding his claims that he was denied proper medical care and treatment when he was not referred to an outside medical provider.

**Eleventh Immunity**

Defendant Allbaugh also alleges he is entitled to Eleventh Amendment immunity. An official capacity claim against an Oklahoma official is actually a claim against the State of Oklahoma. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1988). "[T]he Eleventh Amendment bars federal court jurisdiction over a state agency for both money damages and injunctive relief, or a state official acting in her official capacity in a suit for damages." *Ellis v. Univ. of Kansas Med.*

*Ctr.*, 163 F .3d 1186, 1196 (10th Cir. 1998). Absent a waiver by the state, or a valid congressional override, the amendment bars a damages action against a state in federal court. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Here, the Court finds Plaintiff's claims against Defendant Allbaugh in his official capacity are barred by the Eleventh Amendment.

**Personal Participation**

Defendant Allbaugh further alleges Plaintiff has failed to affirmatively link him to any alleged constitutional violations. The complaint does not allege that Allbaugh denied him medical or mental health care and treatment, and there are no allegations that Allbaugh participated in any constitutional violations. Instead, Allbaugh apparently is named as a defendant because of his position as DOC Director or his presumed supervisory position.

"Personal participation is an essential allegation in a § 1983 claim." *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) (citations omitted). *See also Mee v. Ortega*, 967 F.2d 423, 430-31 (10th Cir. 1992). Plaintiff must show that a defendant personally participated in the alleged civil rights violation. *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996). Supervisory status is not sufficient to support liability under § 1983. *Id. See also Polk County v. Dodson*, 454 U.S. 312, 325 (1981) (holding "Section 1983 will not support a claim based on a respondeat superior theory of liability."). Here, the Court finds Plaintiff has not shown that Defendant Allbaugh participated in the alleged constitutional violations. Therefore, Plaintiff has failed to state a claim against Allbaugh.

**ACCORDINGLY,** Defendant Allbaugh's motion to dismiss (Dkt. 16) is GRANTED, and this action is DISMISSED. This dismissal shall count as a "PRIOR OCCASION" or "STRIKE," pursuant to 28 U.S.C. § 1915(g).

**IT IS SO ORDERED** this 27th day of March 2019.

_Ronald A. White_
Ronald A. White
United States District Judge
Eastern District of Oklahoma